UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY,

Plaintiff,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY – OFFICE OF THE
INSPECTOR GENERAL,

Defendant.

Case No. 15-cv-1012 (CRC)

## MEMORANDUM OPINION

Plaintiff Public Employees for Environmental Responsibility ("PEER"), a non-profit organization broadly aimed at educating the public concerning the activities of government, Compl. ¶ 1, sought records from the U.S. Environmental Protection Agency – Office of the Inspector General ("EPA-OIG") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), concerning a potential violation of federal "revolving-door" prohibitions by a former member of the U.S. Chemical Safety and Hazard Investigation Board ("CSB"). After PEER filed suit in this Court, the EPA-OIG produced nearly nine hundred pages of responsive records, but partially redacted or fully withheld certain pages under various FOIA exemptions. EPA-OIG now moves and PEER cross-moves for summary judgment, disputing one central issue: Does the attorney-client privilege allow an agency to withhold memoranda, including factual findings, written by agency investigators to agency lawyers in order to secure legal advice regarding the criminal liability of an outside party? The Court concludes that it does, and grants summary judgment for the EPA-OIG.

## I.     Background

PEER submitted a FOIA request to EPA-OIG in April 2014 seeking records related to a February 2014 letter, submitted by the then-chair of the CSB, asking the EPA-OIG to investigate a potential violation of the federal "revolving-door" statute, 18 U.S.C. § 207.  Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s MSJ"), Ex. 1 ("Levine Decl."), Ex. A.  According to the FOIA request, the letter included a "detailed allegation . . . involving a former CSB board member for his interpleading before the CSB on behalf of his client, Chevron USA."  Id.  More specifically, PEER requested (1) the "Report of Investigation or other written memorialization of any EPA-OIG inquiry into this allegation," (2) "[a]ny decision memos of a decision not to conduct an inquiry into this allegation"; and (3) "any communications after [the date of the letter] between EPA-OIG personnel and any outside or non-OIG party concerning the subject matter of this allegation."  Id.

In June 2015, PEER filed this action under FOIA, alleging that the EPA-OIG had not yet produced documents responsive to its FOIA request.  Compl. ¶ 6.  The EPA-OIG then conducted searches for relevant documents—including a targeted search of the email accounts for four particular individuals, and a broader search of three EPA-OIG offices.  Levine Decl. ¶¶ 8–16.  In October 2015, the EPA-OIG provided PEER with 899 pages of responsive documents, but 57 of those pages were partially redacted and 86 were fully withheld under FOIA Exemptions 5, 6, and 7(C).  Id. ¶ 20; see 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C).  As relevant here, 23 pages of responsive records were fully or partially withheld on the basis of attorney-client privilege under Exemption 5, 5 U.S.C. § 552(b)(5), either because those documents arose in a context where "OIG Investigator(s) sought legal counsel regarding allegations of potential violations of a criminal statute," or where an agency attorney was "present[ing] information, opinion and legal

advice to a federal official." Levine Decl. ¶ 23. Of particular note to PEER were three redacted pages of a "Complaint Summary Report," which the agency's Vaughn index[1] describes as "an investigative document compiled for law enforcement purposes . . . which summarizes the details of a complaint and the investigative findings related to that complaint" and "states that the [c]omplaint was determined to be unsupported and [recommended that it] be closed[.]" Levine Decl. ¶ 23, Ex. D, at 2 (Tracking Number OIG-1-3).

EPA-OIG now moves for summary judgment on the grounds that it has "produced all reasonably segregable, non-exempt portions of responsive records, and properly asserted [FOIA Exemption 5]." Def.'s MSJ 4. PEER cross-moves for summary judgment, making clear that it challenges *only* those "specific redactions" EPA-OIG justified on the basis of attorney-client privilege. Pl.'s Mem. Supp. Cross-Mot. Summ. J. ("Pl.'s Cross-MSJ") 4, 6. The motions are ripe for consideration.

**II.    Legal Standards**

FOIA cases are generally resolved at summary judgment, see Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011), which is appropriately granted when the movant has established that "there is no genuine dispute as to any material fact," warranting "judgment as a matter of law." Fed. R. Civ. P. 56(a).   In deciding a motion for summary judgment, the

---

[1] Under FOIA, an agency asserting a disclosure exemption must submit a "Vaughn index," see Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973), describing each withheld document and explaining the agency's nondisclosure. Oglesby v. U.S. Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996).

Court assumes the truth of the non-movant's evidence and draws all reasonable inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

FOIA imposes a general obligation on the government to provide records to the public, but with explicit exceptions.  5 U.S.C. § 552(a)–(b).  At issue here is FOIA's Exemption 5, which provides for the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The scope of Exemption 5 is properly "determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters."  Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996).  Consequently, although it is not limited to these categories, the exemption protects "predecisional deliberative memoranda," "attorney work product," and—as relevant here—"attorney-client communications."  Id.

The attorney-client privilege protects confidential communications from client to attorney, and from attorney to client.  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980) ("While its purpose is to protect a client's disclosures to an attorney, the federal courts extend the privilege also to an attorney's written communications to a client[.]"); Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 254 n.25 (D.C. Cir. 1977) ("[T]he [attorney-client] privilege has consistently included communications of the attorney to the client as well as vice versa.").  Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice.  This very policy concern grounds FOIA's Exemption 5.  As the D.C. Circuit has explained:

> Exemption [5] is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of

> information to agency decision-makers. Certainly this covers professional advice on legal questions which bears on those decisions. The opinion of even the finest attorney, however, is no better than the information which his client provides. In order to ensure that a client receives the best possible legal advice, based on a full and frank discussion with his attorney, the attorney-client privilege assures him that confidential communications to his attorney will not be disclosed without his consent. We see no reason why this same protection should not be extended to an agency's communications with its attorneys under exemption five.

Mead Data, 566 F.2d at 252.

Of course, the attorney-client privilege is not an all-purpose FOIA evasion mechanism: The privilege applies only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance," Fisher v. United States, 425 U.S. 391, 403 (1976), and to an attorney's "communication [to the client] based on confidential information provided by the client," Schlefer v. United States, 702 F.2d 233, 245 (D.C. Cir. 1983). See also Mead Data, 566 F.2d at 252 (describing the privilege as covering "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice"). In this context, the "client" is the agency and its officials. Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997). And those officials may be either "high-level agency personnel" or "lower-echelon employees." Judicial Watch v. Dep't of the Army, 466 F. Supp. 2d 112, 121 (D.D.C. 2006).

In a FOIA case, "[t]he burden is on the agency to demonstrate . . . that the materials sought . . . have not been improperly withheld." DOJ v. Tax Analysts, 492 U.S. 136, 142 (1989). Here, that means the agency "must prove that [the withheld] document[s]" fall within the scope of the attorney-client privilege. Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982). The Court now turns to considering whether the EPA-OIG has discharged this burden with respect to the documents here withheld.

**III.   Analysis**

As described above, EPA-OIG has cited attorney-client privilege under Exemption 5 to justify the withholding of 23 pages of emails and investigative memoranda, most of them written by OIG investigators for the purpose of seeking legal advice from either OIG or EPA attorneys in connection with an identified, potential revolving-door violation.  EPA-OIG describes these documents as "quintessential attorney-client privilege materials because they (1) reflect communications between an attorney and a client; and (2) . . . reflect communications of facts and advice regarding a legal issue, namely an investigation into [the] potential violation(s) of a criminal statute."  Def.'s MSJ 15.

PEER insists otherwise, arguing that the attorney-client privilege does not apply "when agency communications do not concern 'the legal ramifications of [the agency's] action.'"  Pl.'s Cross-MSJ 8 (citing Vento v. IRS, 714 F. Supp. 2d 137, 151 (D.D.C. 2010)).[2]  Since "the EPA-OIG's investigation did not involve the conduct of any agency employee, but rather, an outside third party," PEER contends the withheld communications "had no bearing on EPA's legal rights or responsibilities," and therefore the attorney-client privilege has no proper application.  Pl.'s Cross-MSJ 8–9.

This argument rests on false premises.  First, as EPA-OIG points out, it is inaccurate to say that the withheld communications "had no bearing" on the agency's "responsibilities": The Inspector General ("IG") Act of 1978, provides that "[i]n carrying out the duties and

---

[2] Vento used this "legal ramifications" language, which actually derives from Mead Data, 566 F.2d at 253, but in context, the phrase means something along the lines of "legal advice." Vento therefore did not narrow the scope of the attorney-client privilege in the way PEER suggests.  And the Vento court followed the relevant language with the unremarkable statement that "the mere fact that an attorney is listed as a recipient or author does not make a document protected under [the attorney-client] privilege."  714 F. Supp. 2d at 151.

*responsibilities* established under this Act, each [IG] *shall* report expeditiously to the Attorney General whenever the [IG] has reasonable grounds to believe there has been a violation of Federal criminal law." 5 U.S.C. § APP. 3 § 4(d) (emphasis added).  In other words, by seeking legal advice regarding the potential federal criminal liability of a former CSB member, the OIG investigators were acting in direct furtherance of the agency's statutory mandate.

Another defect in PEER's argument is the exceedingly narrow conception of the attorney-client privilege it advances.  PEER's rule—that the attorney-client privilege under Exemption 5 covers only communications regarding "the legal ramifications of [an agency's] action," meaning that the communication implicates information "damaging" to the agency or involves a "potential [agency] misdeed," Pl.'s Cross-MSJ 8–9—simply cannot be squared with the relevant cases.  Courts have applied the attorney-client privilege in the FOIA context to protect legal advice from agency attorneys to agency investigators concerning the legal parameters of third-party conduct.  See, e.g., Touarsi v. DOJ, 78 F. Supp. 3d 332, 345 (D.D.C. 2015) (affirming the DOJ's assertion of "the attorney-client privilege to withhold legal advice from FBI attorneys to government agents and employees concerning investigation strategies and a potential prosecution"); Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 209 (D.D.C. 2010) (applying attorney-client privilege to protect the withholding of "email messages from a [Department of Homeland Security ("DHS")] special agent to a DHS OIG attorney seeking confidential legal advice regarding the way in which [a Mexican national] entered into the United States").

Ultimately, PEER leans for support on a single case, Coastal States, 617 F.2d 854, but it is readily distinguishable.  Coastal States concerned the applicability of various FOIA exemptions, including the attorney-client privilege, to certain "memoranda from [the Department

of Energy's ("DOE's")] regional counsel to auditors working in DOE's field offices, issued in response to requests for interpretations of regulations." Id. at 858. The court highlighted that that these audits were "not investigations," and that when conducted, "no charge had been made[,] nor was a violation necessarily suspected." Id. Moreover, the legal advice had broad, even precedential, applicability, giving rise to the court's concern that the agency was developing a body of "secret law." Id. The advice "was regularly and consistently followed by the non-legal staff"; "in some of the offices the documents were indexed by subject matter and used as precedent in later cases"; and "on at least one occasion a regional counsel memorandum involving the audit of a different firm was cited to a member of the public as binding precedent." Id. at 860. As might be expected of precedent-like legal advice, there was also "no attempt whatsoever to protect these memoranda within the agency"; in fact, the agency conceded it did "not know who ha[d] had access to the documents." Id. at 863. Under these circumstances, the court declined to apply the attorney-client privilege to protect the legal memoranda, but it noted that "[i]f DOE were able to establish that some attempt had been made to limit disclosure of the documents to the agency personnel responsible for the audit under discussion in the memorandum, we would have a different case." Id. at 863–64.

*This* is a "different case." As detailed in a declaration submitted by the agency, the EPA-OIG has tagged the relevant records with "restricted" and "official use only" labels, and has stored them in a database accessible only to authorized EPA-OIG employees.[3] Reply Supp.

---

[3] PEER finds it significant that "[t]he responsive records and Vaughn index appear to suggest that the [investigator's] report was not a document that was itself sent to an attorney, but rather a summary prepared for submittal to his or her chain of command." Pl.'s Cross-MSJ 11. But confidentiality is preserved in the agency context so long as "the [relevant] documents, and therefore the confidential information contained therein, were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in

MSJ, Ex. 8 (Suppl. Levine Decl.) ¶¶ 4–6.  This case also differs because it involves advice given in response to a particular complaint regarding a specific suspicion of illegal misconduct, and there is no contention that the advice contained in these withheld documents has been applied in some precedential way beyond those particular circumstances.  In other words, there is no concern that the withheld documents constitute a shadowy body of "secret law."

As an alternative argument, PEER suggests that even if the attorney-client privilege is applicable to the withheld documents, the factual findings in those documents are "reasonably segregable" from the remainder, and therefore as "[n]on-privileged factual material . . . must still be disclosed" under FOIA.  Pl.'s Cross-MSJ 10.  That argument, too, is unavailing.  As discussed above, the attorney-client privilege protects not only legal *advice*, but the confidentially conveyed *facts* upon which that advice is based.  Attorney-client communications are a two-way street.  See Coastal States, 617 F.2d at 862; Mead Data, 566 F.2d at 254 n.25.  Indeed, "[f]actual information provided by the client to the attorney is the essence of the privilege."  Vento, 714 F. Supp. 2d at 151.  And although it is far from clear that the information at issue here itself derived from a third party (as opposed to EPA-OIG and CSB employees), it is established that the attorney-client privilege may apply even where the relevant "legal advice concern[s] information originating with a third party."  Judicial Watch, Inc. v. U.S. Dep't of Treasury, 802 F. Supp. 2d 185, 201 (D.D.C. 2011).

In sum, PEER's conception of the attorney-client privilege is unduly narrow, at odds with the case law, and mainly grounded in a single case that is easily distinguished here.  The

---

relation to the subject matter of the communication.'"  Coastal States, 617 F.2d at 863 (quoting Mead Data, 566 F.2d at 253 n.24).  Those in an investigator's "chain of command" would surely fit that bill.

Court finds that the investigative memoranda at issue were properly withheld under FOIA's Exemption 5.

### IV.     Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment, and will deny Plaintiff's Cross-Motion for Summary Judgment.  An Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 30, 2016